IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WYATT CHRISTESON, individually and on behalf of a class of similarly situated employees,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )  CIVIL ACTION<br>) |
| v. | )  No. 18-2043-KHV<br>) |
| **AMAZON.COM.KSDC, LLC,** | )<br>) |
| **Defendant.** | )<br>) |

## MEMORANDUM AND ORDER

Wyatt Christeson brings suit against Amazon.com.ksdc, LLC to recover unpaid wages, liquidated damages, punitive damages, costs and attorneys' fees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[1]  See Complaint (Doc. #1) filed January 25, 2018.  The parties have reached a settlement agreement.  This matter is before the Court on the Parties' Joint Motion To Approve Settlement Agreement And Release (Doc. #29), Plaintiff's Unopposed Motion To Approve Fees, Costs, And Expenses (Doc. #31) and Plaintiff's Unopposed Motion To Approve

---

[1]  Section 216(b) states in part as follows:

> Any employer who violates the [minimum wage and maximum hour provisions of the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  The Supreme Court has found that the liquidated damages provision is not penal in nature, but constitutes compensation for potential harm to the worker's standard of living and the free flow of commerce which might result in damages that are too obscure and difficult to prove.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945) (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-84 (1942)).

Service Award (Doc. #33), all filed on December 10, 2018. For reasons stated below, the Court overrules all three motions.

**Factual And Procedural Background**

Defendant operates fulfillment centers for the online retailer Amazon.com. From January 25, 2015 to March 31, 2018, defendant employed eight IT Support Engineers, including plaintiff. Memorandum In Support Of Joint Motion To Approve Settlement Agreement And Release (Doc. #30) filed December 10, 2018 at 1. Defendant pays its IT Support Engineers an hourly rate, plus time and one-half for each hour worked over 40 hours in a workweek. Id. Plaintiff asserts that defendant tells its IT Support Engineers the maximum number of hours they are permitted to record for each week – 40, 49 or 55 hours – and that they are not permitted to record additional hours, regardless of whether their job duties require additional hours. Id. Plaintiff asserts that when an IT Support Engineer records more than the maximum hours, a supervisor instructs the engineer to revise his or her timesheet to reflect the permitted maximum. Plaintiff further asserts that the engineer is not paid for such overtime work. Id. at 2.

Defendant disputes plaintiff's claims and asserts that IT Support Engineers were responsible for accurately recording their time and that it prohibited them from performing off-the-clock work. Id. Defendant asserts that its records establish that it never failed to compensate plaintiff or any other IT Support Engineer for compensable work, and that plaintiff never performed unrecorded work. Id. Alternatively, defendant asserts that any FLSA violation was not willful. Id.

On January 25, 2018, plaintiff filed a putative FLSA collective action on behalf of himself and all similarly situated employees who regularly worked more than 40 hours per week and did not receive compensation for overtime hours. See Complaint (Doc. #1) at 3. On March 27,

2018, defendant filed an answer. See Answer (Doc. #4). On August 6, 2018, the parties informed the Court that they reached a settlement agreement. See Joint Notice Of Settlement (Doc. #20). On November 9, 2018, the parties reduced their agreement to writing. See Third Joint Status Report (Doc. #27). On December 10, 2018, the parties filed a motion for settlement approval. See Joint Motion (Doc. #29).

In accordance with the settlement agreement, the parties ask the Court to certify a final collective action consisting of "Christeson and seven other IT Support Engineers who worked for [defendant] at any time between January 25, 2015, and March 31, 2018 (the 'Collective Class Members')." Memorandum In Support Of Joint Motion (Doc. #30) at 4, 6. Defendant has agreed to pay each Collective Class Member who opts in ("Participating Plaintiff") $250.00 plus $195.095 for each instance in which the Participating Plaintiff recorded 40, 49 or 55 hours in a workweek. Each Participating Plaintiff will be entitled to between $250.00 and $3,762.00, depending on his or her timesheets. See id. at 5. If all seven IT Support Engineers opt in and become Participating Plaintiffs, defendant will pay up to $61,636.00, which includes plaintiff's request for $35,000.00 in attorneys' fees, $2,467.62 in costs and a $5,000.00 service award. Id. Defendant has agreed to not challenge plaintiff's request for attorneys' fees and costs, and any unclaimed funds will revert to defendant. Id.; Settlement Agreement ¶ 7.1, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30).

In addition, the agreement requires plaintiff and Participating Plaintiffs to agree to broad claim releases and strict confidentiality provisions. See Settlement Agreement ¶¶ 8, 10, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30). Specifically, Participating Plaintiffs must

release the following claims against the "Released Parties"[2]:

> any and all state, local, or federal claims, obligations, demands actions, rights, causes of action, and liabilities, whether known or unknown, against any of the Released Parties for alleged unpaid overtime wages, straight time pay, late pay, minimum wages, miscalculation of bonus payments, misclassification, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, attorneys' fees, punitive damages, treble damages, restitution and equitable relief, interest, litigation costs, restitution, or other compensation and relief, arising under the FLSA or any other federal, state, or local law, statute, rule, ordinance, regulation, constitution, court-created/common law, and/or agreement with respect to allegedly unpaid wages during the time that the Collective Class Members were employed by any of the Released Parties.

Settlement Agreement ¶ 8, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30).  As Collective Class Representative, plaintiff must release:

> any and all claims and causes of action (except for claims arising specifically from a breach of this Agreement), whether known or unknown, arising out of or related to Christeson's employment with any of the Released Parties (as defined below) and any other events or transactions involving the Released Parties that precede the date of this Agreement.  The claims and causes of action released by Christeson include, but are not limited to, the following: contract claims; claims for salary, benefits, overtime, bonuses, severance pay, or vacation pay; claims or causes of action sounding in negligence or tort; claims for medical bills; discrimination or retaliation claims; all matters in law, in equity, or pursuant to statute, including damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, claims arising under 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12 101 , et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.; the FLSA, 29 U.S.C. § 200 et seq.; the Immigration

---

[2]  The "Released Parties" includes:

Amazon, and all of its past, present, and future parents, subsidiaries, affiliates, successors, divisions, suppliers, contractors, sub-contractors, predecessors, assigns, holding companies, and joint venturers, and each of its respective past or present directors, officers, employees, partners, members, employee benefit plan administrators and fiduciaries, trustees) principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

Settlement Agreement ¶ II.v, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30).

and Nationality Act; the Kansas Act Against Discrimination; the Kansas Minimum Wage and Maximum Hours Law; the Kansas Discrimination Against Military Personnel Act; the Kansas Discrimination Against Employees who are Victims of Domestic Violence or Sexual Assault Act; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to Christeson's employment with any of the Released Parties and any other events or transactions involving the Released Parties. The Collective Class Representative shall enter into the separate Confidential General Release (as defined below), which shall encompass and include the Collective Class Representative's Released Claims and other terms.

Settlement Agreement ¶¶ II.f, 8, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30).

The agreement further requires plaintiff and Participating Plaintiffs to keep the settlement terms "strictly confidential." Settlement Agreement ¶ 10, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30). Plaintiff must also sign a "Confidential General Release," which requires him to waive any right to workers' compensation benefits and prohibits him from discussing the status of his claims with anyone, making any derogatory comments about the Released Parties and applying for any employment with the Released Parties. Confidential General Release at 2- 3, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30). Plaintiff may not "disclose any information concerning th[e] Confidential General Release to anyone, except as required by court order or subpoena, other than to his immediate family, tax advisor, or legal counsel, who will be informed of and bound by this confidentiality clause." Id. at 3. For any breach of the Confidential General Release, plaintiff must repay ten per cent of his service award. Id.

As required by the FLSA, the parties now ask the Court for final collective action certification and settlement approval. Plaintiff asks the Court to approve his unopposed request for attorneys' fees and costs and a service award.

**Analysis**

I.     **Final FLSA Collective Action Certification**

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b). A lawsuit brought under the FLSA does not become a "collective" action unless other plaintiffs opt in by giving written consent. See Shepheard v. Aramark Uniform & Career Apparel, LLC, No. 15-7823-DDC-GEB, 2016 WL 5817074, at *1 (D. Kan. Oct. 5, 2016) (citations omitted). The Tenth Circuit has approved a two-step approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b). Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination whether plaintiffs are "similarly situated." Id. at 1102. That is, the district court makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members. See Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. Aug. 23, 2004). For conditional certification at the notice stage, the court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102 (quotations and citations omitted). The standard for certification at the notice stage is a lenient one that typically results in class certification. See Brown, 222 F.R.D. at 679.

After discovery (often prompted by a motion to decertify), the court makes a second collective action determination using a stricter standard of "similarly situated." Thiessen, 267 F.3d at 1102-03. During this second-stage analysis, the court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness

and procedural considerations.  See id. at 1103.  Where parties settle FLSA claims before the court has made a final collective action ruling, the court must make some final class certification finding before it can approve a collective action settlement.  See Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *2 (E.D. Cal. July 21, 2010); Burkholder v. City of Fort Wayne, 750 F. Supp.2d 990, 993 (N.D. Ind. Nov. 1, 2010); McCaffrey v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011).

Here, the parties request that the Court certify this lawsuit as a collective action and approve the parties' settlement on behalf of plaintiff and a putative class of IT Support Engineers.  Plaintiff never filed a motion for conditional certification, however, and the parties cite no authority that would permit them to bypass the Tenth Circuit two-step certification process for FLSA collective actions.  See Shepheard, 2016 WL 5817074, at *2.  Although the parties acknowledge that the Court has not yet conditionally certified the collective action, they mistakenly discuss the legal standard for final certification.  See Memorandum In Support Of Joint Motion (Doc. #30) at 6.  The parties cite Gambrell v. Weber Carpet, Inc., No. 10-2131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012), for the proposition that the court applies the second-stage factors "[w]hen assessing conditional certification at this stage."  Memorandum In Support Of Joint Motion (Doc. #30) at 6.  Gambrell does not support this incorrect statement of the law.  Unlike here, plaintiff in Gambrell had previously filed for and received conditional certification.  See Gambrell, 2012 WL 5306273, at *1.

When putative class members have not yet received notice of the lawsuit and an opportunity to opt in, the Court cannot sustain a motion for final settlement approval.[3]  See Perez

---

[3]  Explaining the distinction between Section 216(b) collective actions and Rule 23 class actions, the district court in Perez explained as follows:

v. Avatar Properties, Inc., No. 607-CV-792-ORL-28DAB, 2008 WL 4853642, at *2 (M.D. Fla. Nov. 6, 2008). This is because a named plaintiff's suit becomes moot when his individual claim is satisfied and he is not authorized to settle claims on behalf of putative class members who have yet to opt in. See Prim v. Ensign U.S. Drilling, Inc., No. 15-2156-PAB-KMT, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018);[4] see also, Shepheard, 2016 WL 5817074, at *2. Further, the

> Approving a global settlement with just the involvement of one plaintiff and then giving notice and an opportunity to opt in to an already settled matter, undercuts this critical distinction and the reasons justifying the distinction in the first place. Simply put: because Plaintiff has no independent right to represent others that have yet to appear, Plaintiff has no authority to settle their as yet unasserted claims.

Perez v. Avatar Properties, Inc., No. 607-CV-792-ORL-28DAB, 2008 WL 4853642, at *3 (M.D. Fla. Nov. 6, 2008) (emphasis in original).

---

[4] In Prim, the district court explained that many courts have rejected motions for final settlement approval filed before plaintiffs receive conditional certification. Specifically, it stated as follows:

> Indeed, many courts have rejected motions for final settlement approval where putative class members were not given notice and an opportunity to opt in to the lawsuit before the motion was filed. See, e.g., Shepheard, 2016 WL 5817074, at *2-3 (denying motion for settlement approval filed before putative collective action members had received notice of the lawsuit and an opportunity to opt in and directing parties to file a motion seeking preliminary approval of their proposed settlement); Copeland-Stewart v. New York Life Ins. Co., 2016 WL 231237, at *2, *4 (M.D. Fla. Jan. 19, 2016) (denying motion for collective action certification and final approval of proposed settlement where named plaintiff had "no authority yet to settle the future opt-in plaintiffs' claims"); Cerrato v. Alliance Material Handling, Inc., 2014 WL 1779823, at *2 (D. Md. Apr. 30, 2014) (directing parties to "amend and re-file their motion requesting conditional certification of the collective class and facilitation of notice of the proposed settlement" where no members of the putative class had received notice or an opportunity to opt in to the lawsuit); Perez v. Avatar Props., Inc., 2008 WL 4853642, at *4 (M.D. Fla. Nov. 6, 2008) (finding that the parties had "put the proverbial cart before the horse in settling all claims, before the representative plaintiff ha[d] any indication as to exactly what those claims [were] and how many others he [would] actually represent"). The rationale underlying these decisions is twofold: first, "[i]n the absence of any other plaintiffs opting-in, a named plaintiff's suit becomes moot

-8-

Court's ability to assess the appropriateness of final certification, fairness of the settlement terms and reasonableness of the agreed fee award is undermined when plaintiff has not provided putative class members notice and an opt-in opportunity before seeking final settlement approval.  Prim, 2018 WL 3729515, at *2.

If the parties wish to proceed with the settlement, they should file a motion for conditional certification of the proposed settlement class, preliminary approval of the proposed settlement and approval of the proposed notice to putative class members.  See id. at 3 (citing Shepheard, 2016 WL 5817074, at *3).  If the parties submit these materials and the court approves the parties' recommended procedure, it will order the parties to send the approved notice to the putative class members and establish a period during which putative class members may opt in.  Upon expiration of the opt-in period, the parties may file a motion for final collective action certification and final settlement approval.  Id.

For the foregoing reasons, the Court cannot approve the parties' settlement agreement.  In anticipation of a renewed motion for settlement approval, the Court also addresses other defects in the proposed settlement.

**II.    Proposed Settlement**

When employees sue their employer to recover overtime compensation under the FLSA, the parties must present any proposed settlement to the district court for review and a determination

---

when his individual claim is satisfied," Cerrato, 2014 WL 1779823, at *1 (citing Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1529 (2013)); second, a named plaintiff is not authorized to settle claims on behalf of putative class members who have not yet opted in to the lawsuit, see Perez, 2008 WL 4853642, at *3. The Court finds the reasoning in these cases persuasive.

Prim, 2018 WL 3729515, at *2.

whether the settlement is fair and reasonable.  Gambrell v. Weber Carpet, Inc., No. 10-2131-KHV, 2012 WL 162403, at *2 (D. Kan. Jan. 19, 2012) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)).  If the settlement reflects a reasonable compromise of issues actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.  Id. at *2 (citing Lynn's Food Stores, 679 F.2d at 1354); McCaffrey, 2011 WL 32436, at *3.

To approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees.  See McCaffrey, 2011 WL 32436, at *2.

### A. Bona Fide Dispute

Parties requesting approval of an FLSA settlement must provide the Court sufficient information to determine whether a bona fide dispute exists.  See Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1241 (M.D. Fla. 2010).  To meet this obligation, the parties should provide the following information: (1) a description of the nature of the dispute (e.g., a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  McCaffrey, 2011 WL 32436, at *2.

The parties' motion provides this information.  A dispute exists as to whether Collective Class Members were forced to work overtime hours without compensation.  Defendant operates

Kansas fulfillment centers for Amazon.com and the Collective Class Members are IT Support Engineers who maintain and install computer hardware and software and assist with the build out of new facilities. Memorandum In Support Of Joint Motion (Doc. #30) at 1. Plaintiff asserts that Collective Class Members are entitled to up to ten hours per week of unpaid overtime at a rate of approximately $37 per hour. Id. at 7. Defendant disputes the Collective Class Members' right to overtime because its policies expressly prohibited IT Support Engineers from working off the clock. Id. at 2, 8. In addition, defendant maintains that log-in and security records, compared to timesheet entries, demonstrate that defendant compensated Collective Class Members for all time which they worked. Id.

Based on this record, the Court finds that the parties have a bona fide dispute.

### B.   Fair And Equitable

To determine whether the proposed settlement is fair and equitable, the factors which courts consider in approving class action settlements under Rule 23(e), Fed. R. Civ. P., are instructive but not determinative. McCaffrey, 2011 WL 32436 at *5. The Court must also consider factors relevant to the history and policy of the FLSA. Id. (citing Dees, 706 F. Supp.2d at 1241).

Under Rule 23(e), the Court determines whether a settlement is fair, reasonable and adequate by considering the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. Id.

Consideration of these factors weighs in favor of approval. First, the record suggests no

reason to doubt that the proposed settlement was fairly and honestly negotiated. Second, it appears that the case involves serious questions of law and fact which place the ultimate outcome of the litigation in doubt, particularly as to whether class members in fact worked overtime hours and whether a two-year or three-year statute of limitations applies. Third, it appears that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. And fourth, the parties believe that the settlement is fair and reasonable.

As noted, however, the Court must also determine that the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA. In this regard, and for reasons discussed below, the Court is not satisfied that the settlement is fair and equitable.

### 1. Proposed Releases

It is inappropriate to require a plaintiff to agree to an overly-broad release as part of a wage settlement. As the United States District Court for the Middle District of Florida stated:

> Pervasive, overly broad releases have no place in settlements of most FLSA claims. The FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time.

Bright v. Mental Health Res. Ctr., Inc., No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) (citing Moreno v. Regions Bank, 729 F. Supp.2d 1346, 1351-52 (M.D. Fla. 2010)).

Here, the proposed settlement agreement contains numerous overly-broad release provisions. For example, plaintiff must release claims arising under laws "affecting or related to Christeson's employment with any of the Released Parties and any other events or transactions involving the Released Parties." Settlement Agreement at 3, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30). The Confidential General Release further requires plaintiff to release

the Released Parties from "all actions arising out of his employment relationship with any of the Released Parties and the termination of that employment relationship." Confidential General Release at 2, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30); see Gambrell, 2012 WL 5306273, at *6 (cannot require plaintiff to release all employment claims as condition of wage settlement).

In addition, the settlement agreement requires Participating Plaintiffs to "fully, finally, and forever release[ ], dismiss[ ] with prejudice, relinquish[ ], and discharge[ ] all Released Claims" against Released Parties. "Released Parties" includes, among others, Amazon's "employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers." Settlement Agreement ¶ II.v, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30). In Barbosa v. Nat'l Beef Packing Co., LLC, this Court rejected a settlement agreement which insulated defendant from plan-related benefits claims, which is overly broad and unfair to opt-in plaintiffs. See Barbosa v. Nat'l Beef Packing Co., LLC, No. 12-2311-KHV, 2014 WL 5099423, at *8 (D. Kan. Oct. 10, 2014). Similarly, the Court finds that requiring release of claims against trustees, insurers and co-insurers is also overly-broad and unfair.

Accordingly, the parties should revise and narrow the proposed releases before resubmitting a new settlement proposal.

### 2. Confidentiality Clauses

The settlement conditions Participating Plaintiffs' receipt of settlement funds on their agreement to strict confidentiality requirements.[5] Settlement Agreement ¶ 10.2, Ex. 1 to

---

[5] Despite the strict confidentiality clauses contained in the settlement agreement, the parties filed the agreement in a public court docket and thus the terms of the agreement are already in the public domain.

Memorandum In Support Of Joint Motion (Doc. #30).   For plaintiff, the confidentiality terms are even more stringent.   Under the Confidential General Release, for example, plaintiff may not even discuss the settlement with anyone outside his immediate family, tax adviser and legal counsel. Confidential General Release at 3, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30).

These confidentiality requirements are antithetical to the FLSA and cannot be enforced. The settlement agreement is a public document, and its terms are in the public domain.   Such confidentiality requirements "contravene[ ] the legislative purpose of the FLSA and undermine[ ] the Department of Labor's regulatory effort to notify employees of their FLSA rights."   Dees, 706 F. Supp.2d at 1242.

Further, Section 15(a)(3) of the FLSA prohibits an employer from retaliating against an employee who asserts FLSA rights.   See 29 U.S.C. § 215(a)(3).   The requirement that plaintiff repay ten per cent of his service award for every time he breaches the confidentiality requirements is a retaliatory action that violates the FLSA.[6]   See Dees, 706 F. Supp.2d at 1242.

---

[6]   In Dees, the court explained as follows:

> If an employee covered by a confidentiality agreement discusses the FLSA with fellow employees or otherwise asserts FLSA rights, the employer might sue the employee for breach of contract.  The employer's most proximate damages from the employee's breach are the unpaid FLSA wages due other employees who learned of their FLSA rights from the employee who breached the confidentiality agreement.  A confidentiality agreement, if enforced, (1) empowers an employer to retaliate against an employee for exercising FLSA rights, (2) effects a judicial confiscation of the employee's right to be free from retaliation for asserting FLSA rights, and (3) transfers to the wronged employee a duty to pay his fellow employees for the FLSA wages unlawfully withheld by the employer.  This unseemly prospect vividly displays the inherent impropriety of a confidentiality agreement in settlement of an FLSA dispute.

Dees, 706 F. Supp.2d at 1242.

### 3. Non-Disparagement Clause

The Confidential General Release requires that plaintiff "refrain from making any derogatory comment in any format, whether written or oral, to the press or any individual or entity regarding the Released Parties or the relationship between Christeson and the Released Parties." Confidential General Release at 3, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30). Just as defendant may not require plaintiff or Participating Plaintiffs to agree to any confidentiality terms, defendant may not condition plaintiff's FLSA rights on his refraining from making disparaging comments about defendant. See Dees, 706 F. Supp.2d at 1247 ("An employee's right to a minimum wage and overtime is unconditional, and the district court should countenance the creation of no condition, whether confidentiality or any other construct, that offends the purpose of the FLSA. An employer is obligated unconditionally to pay a minimum wage and overtime to the complainant and his fellow employees; the district court should not become complicit in any scheme or mechanism designed to confine or frustrate every employee's knowledge and realization of FLSA rights."). The non-disparagement clause is unenforceable.

### 4. Prohibition On Plaintiff's Future Employment

The Confidential General Release also prohibits plaintiff from certain future employment relationships with defendant. As stated above, plaintiff's exercise of rights under the FLSA cannot be conditioned on contract provisions which, if enforced, would constitute impermissible retaliation under Section 215(a)(3).

### III. Attorneys' Fees, Costs And Service Award

The FLSA also requires that a settlement agreement include an award of "a reasonable attorney's fee . . . . and costs of the action." See 29 U.S.C. § 216(b); Gambrell, 2012 WL 5306273, at *3. Though the Court has discretion to determine the amount and reasonableness of the fee,

-15-

the FLSA fee award is mandatory.  Id. (citing Wright v. U-Let-Us Skycap Serv., Inc., 648 F. Supp. 1216, 1218 (D. Colo. 1986)).

On December 10, 2018, plaintiff filed an Unopposed Motion To Approve Fees, Costs, And Expenses (Doc. #31) and a Memorandum In Support Of Plaintiff's Unopposed Motion To Approve Fees, Costs, And Expenses (Doc. #32), in which plaintiff asks the Court to approve $35,000.00 in attorneys' fees and $2,467.62 in costs and expenses.  Plaintiff also requests a $5,000.00 service award.  Plaintiff's Unopposed Motion To Approve Service Award (Doc. #33). Because the parties have failed to follow the proper procedures for obtaining settlement approval, the proposal for attorneys' fees and costs and plaintiff's service award is premature.  See Leigh v. Bottling Grp., LLC, No. CIV.A. DKC 10-0218, 2011 WL 1231161, at *5 (D. Md. Mar. 29, 2011) ("[W]ithout knowing the size of the collective class – or whether there will even be a class – any request for [award] approval at this juncture is premature."); see also, Shepheard, 2016 WL 5817074, at *3 (outlining proper settlement procedure).  However, the Court highlights two potential issues with plaintiff's proposed awards.  First, under the proposed settlement, defendant agreed to not oppose or object to plaintiff's request for attorneys' fees and costs.  See Settlement Agreement ¶ 9.1, Ex. 1 to Memorandum In Support Of Joint Motion (Doc. #30).  When defendant agrees to not oppose an award of attorneys' fees, the Court is forced "to act as adversary to plaintiffs' counsel in examining fee applications."  Bruner v. Sprint/United Mgmt. Co., No. 07-2164-KHV, 2009 WL 2058762, at *10 (D. Kan. July 14, 2009); see Nat'l Beef Packing Co., 2014 WL 5099423, at *9.  The Court has previously warned that "it will skeptically examine and presumably overrule any fee proposal which is presented in a non-adversarial context."  Bruner, 2009 WL 2058762, at *10.  Second, the proposed settlement provides that unclaimed funds revert to defendant.  Unless every putative class member joins the proposed settlement, a portion of the

$61,636.00 will revert to defendant. Reversion of a large portion of the maximum fund to defendant will affect the Court's determination of the reasonableness of both the attorneys' fees and plaintiff's service award.

### Conclusion

For the reasons stated above, the Court overrules the parties' request for settlement approval and plaintiff's request for approval of attorneys' fees and a service award.

**IT IS THEREFORE ORDERED** that the Parties' Joint Motion To Approve Settlement Agreement And Release (Doc. #29) filed December 10, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Unopposed Motion To Approve Fees, Costs, And Expenses (Doc. #31) filed December 10, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** Plaintiff's Unopposed Motion To Approve Service Award (Doc. #33) filed December 10, 2018 is **OVERRULED**.

Dated this 29th day of January, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge